IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LORRAINE SIPPLE,

        Plaintiff,


v.                                    Civil Action No. 2:04-cv-00642


JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Lorraine Sipple (hereinafter referred to as "Claimant"), protectively filed an application for DIB on September 9, 2002, alleging disability as of March 28, 2002, due to back

problems, hip and leg complaints, anxiety/depression, and tic douloureux. (Tr. at 63, 94.) The claim was denied initially and upon reconsideration. (Tr. at 44-47, 50-1.) On May 9, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 52.) The hearing was held on October 15, 2003 before the Honorable Theodore Burock. (Tr. at 276-303.) By decision dated March 15, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-23.) The ALJ's decision became the final decision of the Commissioner on May 14, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On June 23, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The

first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

3

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14, Finding No. 2, tr. at 22.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of lumbosacral disc disease, cervical disc disease, obesity, and depression. (Tr. at 14, Finding No. 3, tr. at 22.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4, tr. at 22.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 19.) As a result, Claimant cannot return to her past relevant work. (Tr. at 20.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as cashier-II, small parts assembler, and office mail clerk, which exist in significant numbers in the national economy. (Tr. at 21, Finding No. 13, tr. at 22.) On this basis, benefits were denied. (Tr. at 22-3.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular

4

> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 47 years old at the time of the administrative hearing. (Tr. at 279.) She has a high school equivalent (GED) education. (Tr. at 100.) In the past, she worked as a secretary. (Tr. at 95.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

Claimant alleges disability onset as of March 28, 2002. (Tr. at 63.) Medical information prior to that time was considered for

background information only.

Claimant experienced neck and low back pain and stiffness as early as May 1997 following an automobile accident.  (Tr. at 134-8.) She sought treatment at the Back, Neck and Pain Clinic through November of that year.  Although she was not discharged, Claimant's treatment notes with the clinic end on November 7, 1997. (Tr. at 131-8.)  Claimant also treated with Ulysses D. Agas, M.D. for back pain in 1997. (Tr. at 141-5.) She reported low back pain and left hip and leg pain on November 10, 1997, for which Dr. Agas prescribed Darvocet.  (Tr. at 144.) On November 21, 1997, Claimant returned, stating that she still had severe pain in her lower back, and that she experienced pain in her left hip, leg and shoulder when lifting.  (Tr. at 143.)  Dr. Agas commented that Claimant would continue to have some areas of pain on exertion, but should improve with rest.  He opined that she would require treatment such as analgesics or physical therapy.  He released her to resume normal physical activity, but not strenuous activity. (Tr. at 143.)

Claimant only visited Dr. Agas once in 1998, with complaints of a sore throat.  In early 1999, an antibiotic was prescribed. (Tr. at 142.)  There are no other notes pertaining to neck, back, or leg pain until September 27, 1999, at which time Claimant visited Dr. Agas with complaints of swelling in her feet, fatigue, headaches, and a burning sensation in her mid back.  (Tr. at 141.) On September 14, 2001, Dr. Agas diagnosed chronic bronchitis. (Tr.

at 139.)

On March 4, 2002, Diane E. Shafer, M.D. evaluated Claimant's low back and neck pain which had reportedly persisted for several years. (Tr. at 226.) Claimant described the pain as constant and severe, and stated that it was precipitated by walking, sitting or standing for extended periods of time. (Tr. at 226.) Claimant's functional mobilities were all recorded as "stable." She had tenderness and limited range of motion in her lumbar and cervical spine. (Tr. at 227.) Dr. Shafer diagnosed sprains and strains of the lumbosacral joints/ligaments as well as Claimant's neck. She advised aqua therapy, back brace and pillow, chem pad, therapeutic exercises, heat and massage, iontophoresis, and a TENS unit. (Tr. at 227.) She opined that Claimant was unable to return to work; however, at the same time, she advised Claimant to increase her level of exercise. (Tr. at 227-8.)

On November 17, 2002, Claimant was involved in a second automobile accident, from which she suffered back and left elbow pain. (Tr. at 231-2.) Upon examination, Claimant had full range of motion in all joints, with pain. (Tr. at 230.) Radiological tests showed only moderate degenerative changes of Claimant's cervical spine, and minimal degenerative changes of her thoracic and lumbar spine. (Tr. at 234.) Examiners diagnosed a hip contusion and sprains to Claimant's neck and back, discharging her in a matter of hours. (Tr. at 230.)

An MRI of Claimant's lumbar spine dated November 23, 2002 revealed no significant abnormalities.  There was no evidence of spinal stenosis or nerve root indentation.  (Tr. at 236.)

State agency medical source Rafael A. Gomez, M.D. completed a Physical Residual Functional Capacity Assessment form on January 1, 2003.  (Tr. at 237-44.)  Dr. Gomez opined that Claimant suffered from tic douloureux and neck and back pain.  (Tr. at 237.)  He restricted her to lifting 20 pounds maximum on an occasional basis and 10 pounds maximum on a frequent basis, and found that she could stand and walk with normal breaks for a total of six hours in an eight-hour workday.  She could sit for a total of six hours in a normal eight-hour workday, and could push and pull without limitation.  (Tr. at 238.)  Claimant could occasionally climb, balance, stoop, kneel, crouch or crawl; had no manipulative or visual limitations, and no communicative limitations.  She should avoid even moderate exposure to extreme cold and heat, and should avoid concentrated exposure to wetness, humidity, noise, vibration, fumes, odors, dusts, gases, etc.  She should also avoid hazards such as machinery and heights.  (Tr. at 239-41.)  Dr. Gomez noted that Claimant's activities of daily living included cooking, doing laundry, vacuuming, paying bills, dusting, mopping, washing dishes, shopping, driving, watching television, visiting, and going to the post office.  (Tr. at 244.) He concluded that Claimant was reduced to light work with environmental restrictions.  (Tr. at 242.)

8

Claimant visited Guyan Valley Hospital (Ernesto Manuel, M.D.) on January 31, 2003 and reported that she had been depressed, nervous, and unable to sleep for several years.  (Tr. at 247.) Dr. Manuel prescribed Zoloft, which was refilled at Claimant's request in March, 2003. (Tr. at 246.)  At her March visit, Claimant was fully oriented with appropriate affect, and denied suicidal ideations.  (Tr. at 246.)

Robert E. Perez, M.D. examined Claimant for back and leg pain, "nerves", and tic douloureux on March 17, 2003. (Tr. at 267.)  His notes reflect that Claimant was not taking any medication.  (Tr. at 267.)  She had chronic back pain, anxiety and depression, and varicose veins.  (Tr. at 267.) Her bone density scan was normal. (Tr. at 270.) Thereafter, Claimant reported continuing back pain, anxiety, and depression through September 2003, despite medication, which Claimant stated was ineffective.  (Tr. at 265-66.)

State agency medical source Rogelio Lim, M.D. completed a Physical Residual Functional Capacity Assessment form on March 28, 2003. (Tr. at 250-7.) His findings with respect to Claimant's exertional, postural, manipulative, visual and communicative limitations were identical to those of Dr. Gomez, supra.  (Tr. at 251-2.)  He found that Claimant could tolerate unlimited exposure to extreme heat, cold, wetness, humidity, noise and fumes, but that she should avoid concentrated exposure to vibration and hazards. (Tr. at 254.)

Claimant visited Antonio R. Diaz, Jr., M.D. on July 30, August 28, and October 26, 2003.  (Tr. at 259-61.)  Notes from these visits are illegible.  However, copies of written prescriptions indicate that Dr. Diaz prescribed Zoloft and Ambien during this time.  (Tr. at 262.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to defer to the opinion of treating source Diane Shafer, M.D.; (2) the ALJ failed to consider Claimant's impairments in combination; (3) the ALJ failed to properly consider Claimant's pain; and (4) the ALJ's decision was not supported by substantial evidence.  (Pl.'s Br. at 10-15.)  The Commissioner responds that the ALJ properly applied the law to the facts of this case in all respects, and that his decision was supported by substantial evidence.  (Def.'s Br. at 6-16.)

   I.    *Treating Physician*

Claimant asserts that Diane Shafer, M.D. opined that she was limited in walking, standing, sitting, and climbing stairs.  (Pl.'s Br. at 10-11.) However, the record shows that while Claimant reported difficulties with these activities, Dr. Shafer did not test her abilities, nor opine as to whether Claimant could actually perform them, but instead remarked that the area of each complaint was "stable".  (Tr. at 226.) Nonetheless, Dr. Shafer did opine that

Claimant was unable to work.  (Tr. at 228.)

Claimant argues that the ALJ erred in rejecting Dr. Shafer's opinions, insisting that Dr. Shafer was her treating physician. However, Dr. Shafer only evaluated Claimant on one occasion, and did not have the familiarity with her case which treating physicians normally have: a "detailed, longitudinal picture of [Claimant's] impairments [which] bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2)(2004).  Although Claimant selected Dr. Shafer of her own accord, Dr. Shafer had no more knowledge of her condition from her single visit than a consultative or one-time examiner.  As such, her opinions were not entitled to treating physician deference.

Even assuming *arguendo* that Dr. Shafer could be called a treating physician, her opinions still would not control here.  A treating physician's opinion is afforded controlling weight only if two conditions are met: (1) the opinion is supported by clinical and laboratory diagnostic techniques and (2) the opinion is not inconsistent with other substantial evidence.  Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2004).

The regulations also provide that if a medical opinion is

11

internally inconsistent, the Commissioner will weigh all of the evidence to see if a determination can be made based upon the record. 20 C.F.R. § 404.1527(c)(2)(2004). Dr. Shafer's opinions are unreliable in all three of these respects; hence, it was appropriate for the ALJ to weigh her opinions against the remainder of the record.

First, Dr. Shafer's opinions were not supported by objective medical findings. (Tr. at 19, <u>citing</u> tr. at 226-8.) While Dr. Shafer observed decreased lordotic curve, tenderness and limited range of motion in Claimant's neck and back, she gave no explanation as to why such minimal impairments would give rise to a work restriction, much less the total inability to work for 12 months which Claimant alleges. Dr. Shafer formed her opinions without any radiological testing and with scant clinical testing.

Next, Dr. Shafer's opinions are inconsistent with the remainder of the record. As the ALJ stated, Dr. Shafer's findings were greatly undercut by the fact that Claimant had not tried any of the treatment modalities she prescribed, other than the occasional use of heat (and an over-the counter patch.) (Tr. at 17, <u>citing</u> tr. at 284.) Nor did Claimant follow up with Dr. Shafer; in fact, Claimant sought no additional treatment for these conditions from any source until November 2002, following her automobile accident. (Tr. at 16.) Nor did Claimant supplement any of her prescription medication with over-the-counter medicines,

aside from "patches". (Tr. at 17, 284.) Upon radiological testing, Claimant had no spinal stenosis or nerve root compression, only mild degenerative changes in the lumbar and thoracic spine, and moderate degenerative changes in her cervical spine. (Tr. at 16, citing tr. at 234, 236.) State agency medical reviewers, Dr. Gomez and Dr. Lim, both opined that Claimant could engage in light work, based on their review of all the records. (Tr. at 19-20, citing tr. at 237-44, 250-7.)  Dr. Shafer's opinion that Claimant was unable to work stands alone and contrary to these other records.

Finally, Dr. Shafer's notes are internally inconsistent. Dr. Shafer advised that Claimant should increase exercise, and gave no limitation as to her daily activities.  Both of these recommendations are inconsistent with a disabling injury. Moreover, as the ALJ noted, while Dr. Shafer opined that Claimant was unable to return to work, she did not state that Claimant was *permanently* disabled nor unable to return to work *in any capacity*. (Tr. at 18, citing tr. at 228.)

Claimant makes much of the ALJ's comment that "[t]here is no medical evidence close in time to Dr. Shafer's evaluation which contradicts her findings, but none that reproduces them, either." (Pl.'s Br. at 10.)  Claimant suggests that this was the ALJ's rationale for dismissing Dr. Shafer's opinions.  The full page in the opinion analyzing Claimant's neck, back, shoulder and leg complaints and the above deficiencies in Dr. Shafer's opinions as

13

noted by the ALJ dispose of that argument. (Tr. at 16-9.)

For these reasons, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's decision to discount Dr. Shafer's opinions.

## II.   *Combination of Impairments*

Claimant argues that the ALJ failed to consider the combined impact of her neck pain, left side pain, leg pain and bronchitis, as well as migraine headaches, hypothyroidism, osteoporosis and osteoarthritis of the spine, depression and nervousness, panic disorder and insomnia. (Pl.'s Br. at 11-12.) The only conditions Claimant listed as disabling in her initial filing were "bad back, hip, legs, nerves, tic douloureux." (Tr. at 94.)  At the hearing, Claimant described her impairments in her neck, shoulder, low back and side down to her leg; and also stated that she suffered from depression.  (Tr. at 282-3.) While Claimant argues that the ALJ should have considered the effect of the conditions listed anew in her Brief, she offers no medical evidence suggesting that she was limited by any of these during the relevant time period.  Instead, she refers to treatments that occurred prior to her alleged onset date, some as early as 1990 through 1993.  (Tr. at 164, 168-72.) Claimant's last complaint of bronchitis occurred six months before her alleged onset date. (Tr. at 15, _citing_ tr. at 139.) Claimant's lungs have been normal upon clinical examinations since that time. (Tr. at 15, _citing_ tr. at 246, 265-67.) Her lack of treatment for

14

many of her other complaints tends to show that her conditions were not severe, if they occurred at all, during her alleged disability period.  20 C.F.R. § 404.1529(c)(3)(v)(2004).  Claimant fails to describe how any of those heretofore unmentioned conditions (migraines, hypothyroidism, osteoporosis) functionally affected her or impacted her other impairments after her onset date of March 28, 2002.

Likewise, even assuming she could find support in the record for the limitations she alleges, Claimant's attorney failed to ask the vocational expert what effect these would have upon the opinions he gave.  Her argument now only assumes that his conclusions would differ; she can give no proof of this.

Contrary to Claimant's remaining argument, the ALJ gave due consideration to her depression and anxiety.  He began by summarizing the treatment she had undergone.  (Tr. at 18-19.) Treatment notes during the relevant time period included those of Dr. Diaz, who prescribed Ambien to help Claimant sleep.  The ALJ noted that Dr. Perez prescribed Xanax for anxiety and depression, and that Claimant had been diagnosed with panic disorder.  (Tr. at 18, citing tr. at 259-62; 265-7.)  The ALJ relied upon these records evidencing both Claimant's anxiety and depressive tendencies in concluding that Claimant suffered from a depressive disorder, a severe impairment.  (Tr. at 18-19.)

Claimant then argues that she needed medical treatment, but

was unable to afford it. She asserts that she should not be penalized for her lack of medical evidence. (Pl.'s Br. at 12.) This argument is unpersuasive.  There is no indication that Claimant sought and was denied a medical card, which would have enabled her to obtain care.  Rather, her lack of treatment appears to correlate more with her lack of complaints, consistent throughout the record.  Furthermore, while the Social Security system does not provide treatment in advance of benefits, it does provide for free reviews by highly trained physicians in order to assess claimants' complaints when there is inadequate evidence of functional capacity.  In this case, Claimant's records were evaluated by state agency examiners Rogelio Lim, M.D. and Rafael A. Gomez, M.D.  While Claimant may disagree with the findings of these physicians, she cannot argue that her conditions were not well-considered, or that there was insufficient evidence for the ALJ to base his decision upon.

The court proposes that the presiding District Judge find that the ALJ's decision was supported by substantial evidence in these respects.

### III. *Pain and Credibility*

Claimant argues that the ALJ failed to attribute proper weight to the pain she described.  She again cites to records from dates prior to her alleged onset, including pages 164 and 139.  (Pl.'s Br. at 12-13.)  Page 164 reflects osteoarthritis and osteoporosis

16

diagnosed in 1993 (during which time Claimant was still working, despite any complaints). Page 139 shows chronic bronchitis diagnosed on September 14, 2001, six months before onset. As noted above, Claimant had no ongoing complaints of bronchitis during the relevant time period. These complaints cannot properly be considered as part of her overall condition.

While Claimant's neck and back complaints did occur during the time in question, (tr. at 226-8, 234), the ALJ dealt fairly with those. He found that she suffered from the severe impairments of lumbosacral disc disease, cervical disc disease, obesity, and depression. (Finding No. 3, tr. at 22.) He then proceeded with the analysis below.

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. § 404.1529(b) (2004); SSR 96-7p, 1996 WL 374186 (July 2, 1996); see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely

because the severity of pain cannot be proved by objective medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186, at *2.

In this case, the ALJ found that Claimant suffered from the severe impairments of lumbosacral disc disease, cervical disc disease, obesity, and depression. (Finding No. 3, tr. at 22.) He considered the medical evidence surrounding these complaints, including notes from Dr. Agas, Dr. Shafer, Dr. Perez, Dr. Diaz, Dr. Manuel, emergency room records and radiology reports. (Tr. at 16-7.) He opined that Claimant did have medically documented conditions which could give rise to pain.

However, at the second step of the analysis, the ALJ found

19

that Claimant's complaints as to the severity of her conditions was not matched by the medical evidence. (Tr. at 17.) He considered Claimant's failure to pursue treatment or to follow Dr. Shafer's advice that she use various modalities for pain relief and the fact that she had never sought treatment at a pain clinic. (Tr. at 16-7.) He considered also the level and intensity of the treatment she did pursue, including her use (and lack of use) of medications, and her failure to seek physical therapy. (Tr. at 17.) He determined that this evidence did not support a severe level of pain.

The ALJ then stated that Claimant had greatly minimized her daily activities in her hearing testimony. She said that she could lift 10 pounds, walk up to 10 minutes on level ground, stand 20 minutes at a time, or sit 30 minutes at a time. She said that she had trouble climbing stairs and reaching overhead, and that she could not walk downhill due to knee collapse. She claimed she did only light household chores; that her daughter cleaned for her once a week; and that she cooked occasionally but that her husband often brought take-out food home. She said she could not bend at the waist, had to sit on her right side, could not shop more than 20 minutes at a time, had to sit after washing dishes, and had to lie down for a couple hours at a time in the afternoon. She said her only activities were attending church services twice a week. (Tr. at 17, citing tr. at 283-4, 287-91.)

The ALJ compared this testimony to the activities of daily

living questionnaire which Claimant completed following her November 2002 car accident, and detected some inconsistencies. In the questionnaire, Claimant reported that she did household chores such as vacuuming, mopping, and cleaning bathrooms; that she tried to prepare partial full-course meals in the evening; and that she ran errands to the post office and shopped two to three times a week. (Tr. at 17, <u>citing</u> tr. at 107-111.) The ALJ noted that this level of daily activity did not fully support a severe level of impairment. (Tr. at 17.)

Having considered the entire case record in accordance with the law above, the ALJ determined that Claimant's allegations as to her limitations were not fully credible. (Finding No. 5, tr. at 22.) The court proposes that the presiding District Judge find that the ALJ's decision was supported by substantial evidence.

### IV. *Substantial Evidence*

Claimant's last argument is that the ALJ's decision was not supported by substantial evidence. (Pl.'s Br. at 13-14.) She makes no new evidentiary arguments here. For reasons discussed in sections (I) through (III) above, the court proposes that the presiding District Judge find that the ALJ's decision was supported in all respects by substantial evidence.

It is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the

Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.


     June 24, 2005                          Mary E. Stanley
        Date                           Mary E. Stanley
                                       United States Magistrate Judge


23